655 F.2d 1244
 15 ERC 2133, 16 ERC 1208, 211
U.S.App.D.C. 14,
11 Envtl. L. Rep. 20,899
 ENVIRONMENTAL DEFENSE FUND, INC., Trout Unlimited, The
Wilderness Society, Appellants,
v.
R. Keith HIGGINSON, Commissioner, Bureau of Reclamation, U.
S. Department of the Interior, et al.
ENVIRONMENTAL DEFENSE FUND, INC., et al.
v.
R. Keith HIGGINSON, Commissioner, Bureau of Reclamation, U.
S. Department of the Interior, et al.
and
Utah Power & Light Company (Intervenor-Defendant), Appellant.
ENVIRONMENTAL DEFENSE FUND, INC., et al.
v.
R. Keith HIGGINSON, Commissioner, Bureau of Reclamation, U.
S. Department of the Interior, et al.
and
State of Arizona, State of Nevada, State of Wyoming, and
State of Colorado (Intervenor-Defendants), Appellants.
 Nos. 80-1123, 80-1242 and 80-1255.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 3, 1981.
Decided May 15, 1981.
Dissenting Opinion June 30, 1981.
 
 Paula C. Phillips, Denver, Colo., with whom George W. Pring, Denver, Colo., and William A. Butler, Washington, D. C., were on the brief, for appellants in No. 80-1123 and cross/appellees in Nos. 80-1242 and 80-1255.
 William Cohen, Atty. Dept. of Interior, Washington, D. C., for Federal appellees. Sanford Sagalkin, Deputy Asst. Atty. Gen., Robert L. Klarquist and Joshua I. Schwartz, Attys., Dept. of Justice, Washington, D. C., were on the brief, for Federal appellees.
 Jerome Muys, Denver, Colo., with whom Jack D. Palma, II, Dennis M. Montgomery, Denver, Colo., and James V. Lavelle for States of Arizona, et al. appellees in Nos. 80-1123 and 80-1242 and cross/appellants in No. 80-1255.
 Gerry Levenberg, Washington, D. C., with whom R. Keith Guthrie and Jeffrey S. Christie, Washington, D. C., were on the brief, for Utah Power & Light Company, appellee in Nos. 80-1123 and 80-1255 and cross/appellant in No. 80-1242.
 Before MacKINNON, MIKVA and EDWARDS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.
 Dissenting opinion filed by Circuit Judge MacKINNON.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 Before this court are cross-appeals from a summary judgment of the District Court holding that the defendant, the Department of the Interior, may delay preparation of a comprehensive environmental impact statement (CEIS)[1] covering all proposed federal water projects in the Colorado River Basin. Environmental Defense Fund, Inc. v. Higginson, (1980) 14 Env.Rep.Cas. (BNA) 1008 (D.D.C. Jan. 3, 1980). The plaintiffs, the Environmental Defense Fund (EDF) and two other environmental groups,[2] sought declaratory and injunctive relief compelling the Department of the Interior to prepare a basin-wide or comprehensive EIS, and enjoining construction of federal water projects in the basin pending completion of that study. Because congressional action foreclosed the possibility of an injunction halting construction of the projects,[3] the plaintiffs now seek only an order compelling completion of the study.[4] For the reasons set forth below, we vacate the District Court's opinion and remand this case for further proceedings.
 
 
 2
 Before initiation of this lawsuit, and while it was before the District Court, the Department of the Interior had recognized the desirability and necessity of completing a CEIS for the entire Colorado River Basin. The Department had refrained from completing such a study because Congress had not expressly allocated funds for the project.[5] During the pendency of this appeal, however, the Department of the Interior changed its position regarding the necessity for the basin-wide study. Shortly before oral argument, the Department delivered to this court an affidavit from the Department's Deputy Assistant Secretary for Land and Water Resources informing the court that the Department will no longer seek funding for a Colorado River Basin CEIS. The Department stated that it would meet NEPA requirements in the Colorado River Basin through project or site-specific environmental impact statements in which the Department will "discuss( ) and evaluat(e) any cumulative and synergistic environmental impacts." At oral argument counsel for the Department contended that this approach is consistent with both NEPA and the Supreme Court's decision in Kleppe v. Sierra Club, 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).
 
 
 3
 In Kleppe, environmental organizations sought to compel the Department of the Interior to prepare a comprehensive environmental impact statement covering the development of coal reserves in the Northern Great Plains region. The Court identified two circumstances in which the preparation of a CEIS may be required under NEPA. First, the Court made clear that an agency must prepare a CEIS with respect to any major federal action that is intended to be "regional" in scope. See id. at 398-402, 96 S.Ct. at 2724-2726.[6] Second, the Court noted that, even absent such a regional plan, a
 
 
 4
 comprehensive impact statement may be necessary in some cases for an agency to meet (its duty under NEPA). Thus, when several proposals for coal-related actions that will have cumulative or synergistic environmental impact upon a region are pending concurrently before an agency, their environmental consequences must be considered together. Only through comprehensive consideration of pending proposals can the agency evaluate different courses of action.
 
 
 5
 Id. at 409-10, 96 S.Ct. at 2729-30 (footnotes omitted). "Cumulative environmental impacts are, indeed, what require a comprehensive impact statement." Id. at 413, 96 S.Ct. at 2732. The Supreme Court found, on the record before it, that the Department had not abused its discretion in deciding not to prepare a region-wide CEIS.
 
 
 6
 We can find nothing in NEPA, or in the judicial opinions construing it, preventing the Department of the Interior from changing its position regarding the necessity for a CEIS in order to reflect a new departmental policy, a new evaluation of facts, or changed circumstances.[7] However, as Kleppe makes clear, the Department's ultimate decision to prepare site-specific EISs and not a basin-wide EIS is subject to review under the arbitrary and capricious standard.[8] Accordingly, we remand this case to the District Court to enable the plaintiffs to challenge the Department's decision.
 
 
 7
 We believe that a remand is required because this court is in no position to determine whether plaintiffs have met their burden of showing that the Department's new policy is arbitrary, capricious, or contrary to law, absent a trial record dealing with the specifics of the new policy.[9] We have no doubt that the Government may have a change of position in a case of this sort; however, we are equally clear that plaintiffs are entitled to challenge the new position.
 
 
 8
 Insofar as the applicable law is concerned, we would emphasize that, even should the District Court conclude that the Department has not abused its discretion in deciding that a basin-wide EIS is not necessary, all parties to this action agree that NEPA nevertheless requires the Department to prepare environmental impact statements that evaluate the synergistic and cumulative effects of the proposed federal projects.[10] Whether these effects can be properly evaluated in site-specific EISs is left to the Department's discretion, subject to the scope of review specified in Kleppe.[11]
 
 
 9
 The opinion of the District Court is hereby vacated and this case is remanded for further proceedings consistent with this opinion.
 
 
 10
 So ordered.
 
 
 11
 MacKINNON, Circuit Judge, dissenting and files a statement of separate views.
 
 MacKINNON, Circuit Judge (dissenting):
 
 12
 1. The Origin and Development of the Water Resources of the Colorado River Basin.
 
 
 13
 The Colorado River* Basin covers 2,242,000 square miles of 7 states and embraces the fourth longest river in the world. Its area is equal to 1/12th of the total area of the contiguous 48 states and includes numerous territories, regions and sub-basins of widely varied environmental characteristics. Its "Upper Basin" includes substantial areas in Colorado and Wyoming (where most of the water originates) and Utah and New Mexico. Its "Lower Basin" includes portions of Arizona, Nevada and California, as well as portions of Utah and New Mexico. In this large arid area water is the equivalent of gold. Water in this area has been used to irrigate crops from pre-historic times, and modern government has greatly aided the development and utilization of the available water resources.
 
 
 14
 Governmental assistance for water projects in the Colorado River Basin began in 1900-1901 when the Director of the U. S. Geological Survey, acting on local suggestions, authorized a preliminary examination to determine the feasibility of diverting the water of the tributary Gunnison River to the adjacent Uncompahgre Valley on the Western Slope of Colorado. S.Rep.No.1281, 61st Cong., 3d Sess. 623 (1911). In 1902 Congress passed the Reclamation Act[1] directing the construction and maintenance of irrigation works for the storage, diversion and development of waters for the reclamation of the arid and semi-arid lands in 16 designated states in the great plains and far western regions of the nation. The Uncompahgre Valley Project was the first under that memorable law.
 
 
 15
 Subsequently a great many other reclamation projects were authorized by Congress to develop the water resources of the Colorado River and its tributaries and other resources throughout the West. These typically involved government financing to construct dams and distribution systems to store and deliver water. The original purpose was to encourage irrigational agriculture with farmers repaying a part of the cost as they used the water. In subsequent years the nature of the reclamation projects changed from single-purpose dams for the storage and delivery of irrigation water to multi-purpose projects to provide irrigation, electrical power, flood control, domestic water, recreation, fish and wildlife and other benefits. In 1928 Congress adopted the act calling for the construction of the Hoover Dam to protect and develop one segment of the Colorado River Basin. Pub.L.No.70-642, 45 Stat. 1057, 43 U.S.C. § 617 et seq. Congress subsequently passed numerous other acts providing for the protection and development of the water resources of the Colorado River Basin. These included the Boulder Canyon Project Adjustment Act of 1940, Pub.L.No.76-756, 54 Stat. 774, 43 U.S.C. § 618; Colorado River Basin Salinity Control Act of 1974, Pub.L.No.93-320, 88 Stat. 266, 43 U.S.C. § 1571 et seq.; Colorado River Basin Storage Project Act of 1956, Pub.L.No.84-485, 70 Stat. 105, 43 U.S.C. § 620 et seq.; and Colorado River Basin Project Act of 1968, Pub.L.No.90-537, 82 Stat. 885, 43 U.S.C. § 1501 et seq. In 1949 Congress approved the Upper Colorado River Compact of 1948 which distributed the water that was apportioned to the various states by the Colorado River Compact of 1922. These acts authorized construction of a number of storage reservoirs on the mainstream and river tributaries in the Upper and Lower Basins.
 
 
 16
 Before Congress approved any of these projects there were extensive studies by the Bureau of Reclamation which resulted in a recommendation, with extensive congressional hearings being held thereafter.
 
 
 17
 2. The National Environmental Policy Act of 1969.
 
 
 18
 On January 1, 1970, Congress enacted the National Environmental Policy Act of 1969 (NEPA). Pub.L.No.91-190, 83 Stat. 852, 42 U.S.C. § 4321 et seq.[2]
 
 
 19
 Insofar as this case is concerned, the principal provision of NEPA requires federal agencies to prepare and file an environmental impact statement (EIS) covering all "proposals for legislation and other major federal actions significantly affecting the quality of the human environment." Since the enactment of this law the Department of the Interior has prepared an EIS for each "proposal" for the development of the water resources of the Colorado River Basin. The EIS's that were filed included analysis of the cumulative and synergistic effects of each project upon the basin and have not been found to be in violation of any requirements of the National Environmental Policy Act.[3]
 
 
 20
 Recently, in Kleppe v. Sierra Club, 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976), the Supreme Court held that the Secretary of the Interior was not required to prepare a "comprehensive environmental impact statement" on the "entire region" identified as the Northern Great Plains Region because of an alleged threat to the region's environment from coal mining operations on public lands that were involved in the issuance of mining leases in several scattered sections of the region in Wyoming and Montana. The principal rationale of the decision is that a comprehensive EIS was not required for the entire Northern Great Plains Region because the Department of the Interior had not presented any "proposal for major federal action with respect to the Northern Great Plains Region." 427 U.S. at 399, 96 S.Ct. at 2725 (emphasis added). There was "no evidence in the record of an action or a proposal for an action of regional scope." 427 U.S. at 400, 96 S.Ct. at 2726 (emphasis added). The Court also remarked that "(i)n the absence of a proposal for a regional plan of development, there is nothing that could be the subject of the analysis envisioned by the statute for a (environmental) impact statement." Id. at 401, 96 S.Ct. at 2726 (emphasis added).
 
 
 21
 Where no such plan exists, any attempt to produce an impact statement would be little more than a study along the lines of the NGPRP (Northern Great Plains Resources Program), containing estimates of potential development and attendant environmental consequences. There would be no factual predicate for the production of an environmental impact statement of the type envisioned by NEPA.
 
 
 22
 427 U.S. at 402, 96 S.Ct. at 2726 (emphasis added).
 
 
 23
 In the course of its opinion the Court also made an observation that has some relevance to the issues here.
 
 
 24
 (W)hen several proposals for coal-related actions that will have cumulative or synergistic environmental impact upon a region are pending concurrently before an agency, their environmental consequences must be considered together. Only through comprehensive consideration of pending proposals can the agency evaluate different courses of action.
 
 
 25
 427 U.S. at 410, 96 S.Ct. at 2730 (emphasis added) (footnotes omitted). The Court recognized, however, that the conclusion that all proposed coal-related actions in the Northern Great Plains Region are so "related" did not require their analysis in a single comprehensive environmental impact statement (CEIS). 427 U.S. at 410, 96 S.Ct. at 2730. The Court explained:
 
 
 26
 Even if environmental interrelationships could be shown conclusively to extend across basins and drainage areas, practical considerations of feasibility might well necessitate restricting the scope of comprehensive statements.
 
 
 27
 In sum, respondents' contention as to the relationships between all proposed coal-related projects in the Northern Great Plains region does not require that petitioners prepare one comprehensive impact statement covering all before proceeding to approve specific pending applications. As we already have determined that there exists no proposal for region-wide action that could require a regional impact statement, the judgment of the Court of Appeals must be reversed, and the judgment of the District Court reinstated and affirmed. The case is remanded for proceedings consistent with this opinion.
 
 
 28
 427 U.S. at 414-15, 96 S.Ct. at 2732-33 (footnote omitted). The Supreme Court thus upheld the agency practice of issuing site-specific environmental impact statements for sub-regions or sections of the Northern Great Plains Region and observed that "the relationships between all proposed coal-related projects in the Northern Great Plains Region does not require that petitioners prepare one comprehensive impact statement covering all before proceeding to approve specific pending applications." Id. (emphasis added).
 
 
 29
 3. Current Development of the Colorado River Basin and Resulting Issues.
 
 
 30
 Pursuant to Congressional enactments since 1902, all of which followed extensive study by the agency, the Government has constructed and is presently operating in the Colorado River Basin 65 or more storage and diversion dams, hundreds of miles of aqueducts and canals, power plant units, thousands of miles of electric transmission lines, and numerous related structures and facilities. JA 102, para. 12. These are located in widespread areas, regions and sub-basins that have many varying environmental characteristics. The Federal Government is presently constructing in scattered areas throughout the Basin approximately 16 additional projects or major components thereof. JA 102-03, para. 13, 14; 152-55. EIS's have been filed on all such projects. In addition there are in various stages of planning 30 additional water development projects for scattered areas in the Basin. When these plans become definite enough to constitute a proposal an EIS will be filed for each proposal. Also in various stages of planning are numerous state, local and privately financed projects. Some of these developmental projects "will include changes in the operations of existing and future projects."
 
 
 31
 Because of these facts the Secretary of the Interior at one time construed the statute as requiring a comprehensive environmental impact statement (CEIS) for the entire Colorado River Basin, but the present Secretary has since indicated he does not so interpret the statute. On this point he has indicated that environmental impact statements covering the cumulative and synergistic effect of each individual project on the Basin will be filed as each project reaches the "proposal" stage and that he considers such compliance to satisfy the NEPA. The agency will thus continue the same practice of filing "site specific EIS's" that it previously followed.
 
 
 32
 The Supreme Court's decision on the contentions of the Sierra Club with respect to coal mining leases in the Northern Great Plains Region disposes of the contention of appellants here that NEPA must be construed to require a CEIS for the entire Colorado River Basin because of the existence of the "existing and future water resource projects." The principal reason that a CEIS for the entire Colorado River Basin is not required is because there is no "evidence of an action or a proposal for an action of regional scope." 427 U.S. at 400, 96 S.Ct. at 2726. The proposals embodied in the projects that are relevant here do not involve "major federal action with respect to the ... Region (of the entire Colorado River Basin)." As the Supreme Court pointed out in Kleppe : "where no such plan exists, any attempt to produce an impact statement would be little more than a study along the lines of the (Northern Great Plains Resources Program), containing estimates of potential development and attendant environmental studies." 427 U.S. at 402, 96 S.Ct. at 2726. The Supreme Court held that a "study" is not a "proposal." Where such a "study" was being considered or undertaken, broad as it might be, the Supreme Court clearly stated that an EIS was not required because, "(t)here would be no factual predicate for the production of an environmental impact statement of the type envisioned by NEPA." 427 U.S. at 402, 96 S.Ct. at 2726. On reflection, it should have been clear to the Secretary in 1977 when his briefing induced him to comment that a CEIS would be prepared for the Colorado River Basin, that he was in reality talking about a "study" and that NEPA did not require a CEIS therefor. It may have been within his power to prepare such a comprehensive EIS, if he had the money, but he was not required by the NEPA to do so.
 
 
 33
 It is clear from appellant's complaint here that, in reality, they are referring to a "study" since they seek a "statement (EIS) analyzing existing and future water resource projects and operations in the Colorado River Basin." See p. 1253, infra. This omits any reference to presently existing "proposals" which is the only basis for requiring an EIS. 427 U.S. at 414-15, 96 S.Ct. at 2732-33.
 
 
 34
 Moreover, the magnitude and variation of the environmental factors in the entire Colorado River Basin, the degree that the water resources have been developed by the 65 "existing" projects that have been completed since 1901, and the decision of the agency to interpret the statute in a "practical" manner as permitting site-specific EIS's that include consideration of the cumulative and synergistic effects of each specific project on the entire basin, should be dispositive of this case. The Supreme Court in Kleppe contemplated a practically identical factual situation when it remarked that "(e)ven if environmental interrelationships could be shown conclusively to extend across basins and drainage areas, practical considerations of feasibility might well necessitate restricting the scope of comprehensive statements." 427 U.S. at 414, 96 S.Ct. at 2732.
 
 
 35
 Therefore, even if the "study" were to achieve "proposal" status, "practical considerations of feasibility" here would call for affirming the statutory interpretation of the Secretary that site-specific EIS's covering a project's cumulative and synergistic effects on the entire basin would constitute adequate compliance with the NEPA. This conclusion should dispose of the case but appellants raise other issues.
 
 
 36
 4. Instigation of the Present Litigation.
 
 
 37
 On June 21, 1978, appellants filed the complaint in the instant case, the object of which was to require the Department of the Interior to prepare a CEIS for the entire Colorado River Basin. The core demand of the complaint was set forth in paragraph 1 as follows:
 
 
 38
 1. This is a civil suit for declaratory, injunctive and mandatory relief: (a) to require the Department of the Interior and its Bureau of Reclamation to prepare a comprehensive environmental impact statement (EIS) analyzing existing and future water resource projects and operations in the Colorado River Basin, and (b) to enjoin construction of new federal water resource projects in the basin until the EIS analysis is completed.
 
 
 39
 JA at 15.
 
 
 40
 All parties agree that such CEIS would take several years to prepare and cost several million dollars. The parties are in dispute as to the exact length of time required and the exact total cost but there can be no dispute, if appellants obtained the injunctions they originally requested, that the resulting delay in the completion of "new" projects might not be limited to the time required to prepare the CEIS. In such event, substantial additional delay might have resulted from lawsuits that would attack the sufficiency of the CEIS at least that has been the experience this Court has observed in other similar cases. See Wilderness Society v. Morton, 479 F.2d 842, 887-91, 905-06, cert. denied, 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973); cf. Pub.L.No.93-153, § 203(d), 87 Stat. 585. Such delay could be very costly to "new" projects because construction costs on projects relevant to this case are presently estimated to be increasing at a rate of 12 1/2 per cent per year.
 
 
 41
 5. Congress' Response to Appellants' Lawsuit.
 
 
 42
 The attempt by environmental interests "to enjoin construction of all new water resource projects in the basin," excluding units of the Salinity Control Project, until the Secretary complied with appellants' construction of NEPA, came to the attention of Congress in due course. Congress responded quickly within four months on October 17, 1978 by amending the NEPA insofar as its EIS requirements would apply to features (projects) in the Colorado River Basin. The amendment provides:
 
 
 43
 Sec. 110. (a) Notwithstanding any provisions of the National Environmental Policy Act of 1969 ... construction of any feature of the Upper Colorado River Storage Project, ... the Colorado River Basin Salinity Control Projects, ... the Central Arizona Project, ... (or) the Southern Nevada Water Project ... shall proceed if a final Environmental Impact Statement has been filed on any such feature.[4]
 
 
 44
 Pub.L.No.95-465, 92 Stat. 1291 (1978). The intent and effect of this statute is two fold. In providing that the "construction of any feature of the (specified) Project(s) ... shall proceed" Congress deprived any court of jurisdiction to delay or stop any further construction in any of the designated projects pending completion of a CEIS. And, in requiring such projects to "proceed if a final Environmental Impact Statement has been filed on any such feature," the Congress indicated that the filing of site-specific EIS's would be a full compliance with NEPA with respect to the "construction of (all) features" of all projects in the Colorado River Basin that are involved in this litigation. Thus, faced with appellants' lawsuit, Congress removed any effective requirement for a comprehensive EIS covering the entire Colorado River Basin that appellant's lawsuit sought to compel.[5] This action is similar to the action of Congress when this court refused to pass on the validity of the EIS for the Alaska Pipe Line. Pub.L.No.93-153, § 203(d), 87 Stat. 585; Wilderness Society v. Morton, supra.
 
 
 45
 The amendment of the Act recognizes and requires that site-specific EIS's will be filed for all projects in the Basin and that a CEIS is not required. Thus, since there is no effective requirement in the statute for a comprehensive EIS the only practical action to take with respect to this case is to dismiss appellants' complaint. The site-specific EIS's that the Department of the Interior files include consideration of the cumulative and synergistic effect of each project on the entire Basin. With the statutory law in this clear state this case resolves itself into a pure question of statutory interpretation and there is no need for a remand to the District Court for additional hearing. The facts have not changed since the case was argued in the District Court and this Court is as able to interpret the statute as the District Court. The reversion of the agency to its prior position on site-specific EIS's does not involve any factual change in any of the projects. It should also be pointed out that the return to site-specific EIS's is justified by the change in the law which came after the Secretary indicated before October 17, 1978 that he intended to file a CEIS.
 
 
 46
 I would accordingly affirm the judgment of the District Court for the reasons stated herein. To that extent I respectfully dissent from the majority opinion.
 
 
 
 [1]
 The plaintiffs sought an environmental impact statement (EIS) pursuant to the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321-4369 (1976 & Supp. III 1979). Section 102(2)(C) of the Act, 42 U.S.C. § 4332(2)(C) (1976), provides that:
 all agencies of the Federal Government shall
 (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on
 (i) the environmental impact of the proposed action,
 (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
 (iii) alternatives to the proposed action,
 (iv) the relationship between the local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
 (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
 
 
 [2]
 Although collectively labeled "EDF" for the purpose of this opinion, the plaintiffs also include Trout Unlimited and the Wilderness Society
 
 
 [3]
 In a rider to an appropriations bill for the Department of the Interior, Congress specified that, "(n)otwithstanding any provisions of" NEPA, "construction of any feature" of certain water projects in the Colorado River Basin "shall proceed if a final Environmental Impact Statement has been filed on such feature." Pub.L.No. 95-465, § 110(a)-(c), 92 Stat. 1279, 1291 (1978). In other words, Congress decided that construction of these water projects should not be halted in the absence of a comprehensive (i. e., basin-wide) environmental impact statement, so long as a site-specific EIS had been prepared for each proposed project. This anti-injunction rider was added in direct response to the possibility that the present lawsuit might result in an injunction. See Remarks of Rep. Forsythe, 124 Cong. Rec. H11,685-86 (daily ed. Oct. 5, 1978). Of course, this rider does not, by its terms, prohibit the Department of the Interior from preparing a CEIS for the entire Colorado River Basin. See Remarks of Rep. Udall, 124 Cong. Rec. H11,686 (daily ed. Oct. 5, 1978) (supporting the anti-injunction rider, but still expressing the hope that a basin-wide EIS would be prepared)
 
 
 [4]
 Also parties to this suit are five intervenor-cross appellants the Utah Power & Light Co. and the states of Arizona, Colorado, Nevada, and Wyoming. The intervenors contend that the District Court erred in holding that the Department of the Interior has the discretion to complete a basin-wide or comprehensive EIS. Because of our disposition of this case, we do not reach that issue
 
 
 [5]
 All parties recognize that until this litigation, Congress has never required express funding for a CEIS in the budget of the Department of the Interior. The Department sought funding, however, after individual members of Congress contacted the Department about their concern that the Department's budget did not specifically provide for completion of a CEIS in the Colorado River Basin
 
 
 [6]
 There is no doubt that if an agency has adopted a region-wide plan that can be characterized as a major federal action, § 102(2)(C) of NEPA requires the agency to prepare an EIS covering the entire "region." See note 1, supra. Issues may arise, however, over the agency's determination of whether a regional plan exists, or with respect to the size of the region affected by the proposed plan. The agency's decision on the scope of the EIS to be prepared, based upon these factual determinations, is subject to judicial review under the arbitrary and capricious standard. See note 8, infra
 
 
 [7]
 In the affidavit submitted to this court, the Deputy Assistant Secretary noted that the Department had requested "specific funding to do a comprehensive environmental impact statement" and that Congress had denied the requested funding. In light of the failure to obtain funding and "current budgetary restraints" the Department decided no longer to seek funding for the preparation of this particular CEIS. The affidavit also recited the Department's intent to comply fully with NEPA "by discussing and evaluating any cumulative and synergistic environmental impacts in site-specific environmental impact statements prepared for individual projects."
 
 
 [8]
 In order "to prevail (the environmental groups) must show that (the Department has) acted arbitrarily in refusing to prepare one comprehensive statement on this entire region." Kleppe v. Sierra Club, 427 U.S. 390, 412, 96 S.Ct. 2718, 2731, 49 L.Ed.2d 576 (1976). As this court recently noted, "the arbitrary and capricious standard also applies to segmentation of environmental review that avoids overall, programmatic evaluation." National Wildlife Federation v. Appalachian Regional Comm'n., 79-2349, slip op. at 16 (D.C. Cir. Mar. 19, 1981). See the Administrative Procedure Act, § 10(e)(2) (A), 5 U.S.C. § 706(2)(A) (1976)
 
 
 [9]
 Because the Department of the Interior did not submit its affidavit informing this court of its new position until after all briefs had been filed, EDF had no opportunity to prepare a challenge. Consequently, the best course for this court is to remand the case to the District Court, where the plaintiffs will have ample opportunity to test the Department's decision
 We note that Kleppe is instructive in determining whether the Department's decision is arbitrary, capricious, or contrary to law.
 The determination of the region, if any, with respect to which a comprehensive statement is necessary requires the weighing of a number of relevant factors, including the extent of the interrelationship among proposed actions and practical considerations of feasibility. Resolving these issues requires a high level of technical expertise and is properly left to the informed discretion of the responsible federal agencies. Absent a showing of arbitrary action, we must assume that the agencies have exercised this discretion appropriately.
 427 U.S. at 412, 96 S.Ct. at 2731 (citation omitted).
 
 
 [10]
 The parties recognized this duty in oral argument, and the Department of the Interior acknowledged its duty explicitly in the affidavit submitted to this court. See note 7, supra
 
 
 [11]
 The Council on Environmental Quality has stated in its NEPA regulations that:
 Agencies shall make sure the proposal which is the subject of an environmental impact statement is properly defined.... Proposals or parts of proposals which are related to each other closely enough to be, in effect, a single course of action shall be evaluated in a single impact statement.
 
 
 [40]
 C.F.R. § 1502.4(a) (1980). See id. § 1508.25
 The Supreme Court has stated that "CEQ's interpretation of NEPA is entitled to substantial deference. The Council was created by NEPA, and charged in that statute with the responsibility" to review federal programs in light of the statute. Andrus v. Sierra Club, 442 U.S. 347, 358, 99 S.Ct. 2335, 2341, 60 L.Ed.2d 943 (1979) (citation omitted).
 
 
 *
 Within the boundaries of the State of Colorado, what is presently called the Colorado River was originally known as the Grand River. In earlier times it was not called the Colorado River until it emerged from the territory or State of Colorado
 
 
 [1]
 Pub.L.No.57-161, 43 U.S.C. § 372 et seq
 
 
 [2]
 42 U.S.C. § 4332 provides:
 The Congress authorizes and directs that, to the fullest extent possible: ... (2) all agencies of the Federal Government shall
 (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on
 (i) the environmental impact of the proposed action,
 (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
 (iii) alternatives to the proposed action,
 (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
 (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
 Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of title 5, United States Code (5 U.S.C. § 552), and shall accompany the proposal through the existing agency review processes.
 
 
 [3]
 During a period of time while the Secretary was indicating that a comprehensive EIS was going to be prepared for the basin, EIS's for several projects stated that the cumulative and synergistic effects of the project would be covered by the comprehensive EIS. But such EIS's have not been attacked. If they were deficient, proper complaint should have been made
 
 
 [4]
 The complete enactment provides:
 Sec. 110. (a) Notwithstanding any provisions of the National Environmental Policy Act of 1969, Public Law 91-190 (42 U.S.C. 4321 et seq.), construction of any feature of the Upper Colorado River Storage Project as authorized by the Act of April 11, 1956, as amended, shall proceed if a final Environmental Impact Statement has been filed on such feature.
 (b) Notwithstanding any provisions of the National Environmental Policy Act of 1969, Public Law 91-190 (42 U.S.C. 4321 et seq.), the Colorado River Basin Salinity Control Projects, as authorized by Public Law 93-320, and construction of any feature of the Central Arizona Project as authorized by Public Law 90-537, September 30, 1968 (43 U.S.C. 1501 et seq.), shall proceed if a final Environmental Impact Statement has been filed on such feature.
 (c) Notwithstanding any provisions of the National Environmental Policy Act of 1969, Public Law 91-190 (42 U.S.C. 4321 et seq.), construction of any feature of the Southern Nevada Water Project as authorized by Public Law 89-292 (43 U.S.C. 616ggg), as amended, shall proceed if a final Environmental Impact Statement has been filed on any such feature.
 
 
 [5]
 In floor debate several members of Congress stated that they strongly doubted that Congress, when it passed NEPA, ever intended to require a comprehensive environmental impact statement for an entire river basin. 124 Cong.Rec. S12829, H11688, H11689; see generally 124 Cong.Rec. S12806-S12812; S12825-S12832; H11594-H11599; H11684-H11692